IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOYCE COLE, | ) |
|                 *Plaintiff*, | ) Case No. 2:23-cv-01021 |
| v. | ) District Judge Christy Criswell Wiegand |
| | ) Magistrate Judge Kezia O. L. Taylor |
| PRIME CARE MEDICAL and DR. LAURA RUSANO, | ) |
|                 *Defendants*. | ) |

**REPORT AND RECOMMENDATION**

I. **RECOMMENDATION**

For the following reasons, it is respectfully recommended that this case be dismissed with prejudice for Plaintiff's failure to comply with this Court's order to show cause, which expressly advised that this case could be dismissed for Plaintiff's failure to prosecute should she not file a response to the pending Motion to Dismiss by August 12, 2024.

II. **REPORT**

  A. **Procedural History**

Plaintiff initiated this *pro se* civil rights action in June 2023, but it was administratively closed by a deficiency order entered on July 27, 2023. ECF Nos. 1-3. Plaintiff returned to this Court almost eight months later filing a Motion for Leave to Proceed *in forma pauperis* on March 12, 2024. ECF No. 4. Plaintiff's Complaint was docketed after the Court granted her leave to proceed *in forma pauperis* on March 14, 2024, and an Amended Complaint was also filed on that day. ECF Nos. 5-7. After reviewing the Amended Complaint, the Court determined that it was deficient in several regards and entered an order directing Plaintiff to file a second amended

1

complaint thereby allowing her the opportunity to cure those deficiencies. ECF No. 9. Plaintiff filed her Second Amended Complaint on April 11, 2024. ECF No. 10. Defendant Prime Care Medical subsequently moved to dismiss the Second Amended Complaint by Motion filed on June 17, 2024, and Plaintiff was then directed to file her response to the Motion to Dismiss by July 17, 2024. ECF Nos. 14-16. After that deadline passed, the Court entered an order to show cause, which informed Plaintiff that this action could be dismissed if she did not file a response to the Motion to Dismiss, or if she otherwise failed to show cause why she could not do so by August 12, 2024. As of today, Plaintiff has failed to comply with the Court's orders to file a response to Defendant Prime Care Medical's Motion to Dismiss.

### B. Discussion

Rule 41(b) of the Federal Rules of Civil Procedure addresses the involuntary dismissal of an action or a claim, and, under this Rule, "a district court has authority to dismiss an action *sua sponte* if a litigant fails to prosecute or to comply with a court order." *Qadr v. Overmyer*, No. 15-3090, 642 F. App'x 100, 102 (3d Cir. 2016) (*per curiam*) (citing Fed. R. Civ. P. 41(b)); *see also Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 871 (3d Cir. 1994) ("The Supreme Court affirmed, stating that a court could dismiss *sua sponte* under Rule 41(b).").

The Third Circuit Court of Appeals has stated that "a district court dismissing a case *sua sponte* 'should use caution in doing so because it may not have acquired knowledge of the facts it needs to make an informed decision.'" *Qadr*, 642 F. App'x 100 at 103 (quoting *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008)). Before engaging in a *sua sponte* dismissal, "the district court 'should provide the plaintiff with an opportunity to explain his reasons for failing to prosecute the case or comply with its orders.'" *Id.* (quoting *Briscoe*, 538 F.3d at 258).

1. **The *Poulis* Factors**

In *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), the Third Circuit Court of Appeals set forth the following six factors to be weighed in considering whether dismissal is proper under Rule 41(b):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Id.* at 868 (emphasis omitted).  In balancing the *Poulis* factors, no single factor is dispositive, nor do all factors need to be satisfied to result in dismissal of the complaint.  *Briscoe*, 538 F.3d at 263. However, in determining whether a dismissal is warranted, the Court must analyze the factors in light of the "strong policy favoring decisions on the merits." *Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir. 2019).  The Third Circuit has emphasized that "dismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court," and that they "must be a sanction of last, not first, resort."  *Poulis*, 747 F.2d at 867-68, 869 (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).  "Cases should be decided on the merits barring substantial circumstances in support of the contrary outcome." *Hildebrand*, 923 F.3d at 132.

2. **Application of the *Poulis* Factors**

   a. **The extent of the party's personal responsibility.**

"[I]n determining whether dismissal is appropriate, we look to whether the party bears personal responsibility for the action or inaction which led to the dismissal." *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994).  In determining personal responsibility for the delay, the Court must distinguish "between a party's responsibility for delay

3

and counsel's responsibility." *Hildebrand*, 923 F.3d at 133 (citing *Poulis*, 747 F.2d at 868). A plaintiff is not conjecturally responsible for her counsel's delay. *Id*. Any doubt as to personal responsibility should be resolved "'in favor of reaching a decision on the merits.'" *Id*. at 138 (quoting *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002)).

Here, Plaintiff is proceeding *pro se*, so the responsibility for failing to comply with orders, including her obligation to file a response to the pending Motion to Dismiss, is hers alone. Thus, this factor weighs in favor of dismissal.

### b. Prejudice to the adversary.

Prejudice to the adversary is a substantial factor in the *Poulis* analysis; but like any other factor, it is not dispositive. *Hildebrand*, 923 F.3d. at 134. "Relevant examples of prejudice include 'the irretrievable loss of evidence[] [and] the inevitable dimming of witnesses' memories.'" *Id*. (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984)). A party is not required "to show 'irremediable' harm for [this factor] to weigh in favor of dismissal." *Id.* (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003)). If the opposition is unable to prepare "a full and complete trial strategy" then there is sufficient prejudice to favor dismissal. *Id*. (citation omitted).

Service has been successfully effectuated on at least one Defendant in this case, and that Defendant has suffered prejudice by having to expend resources to defend this action in which Plaintiff appears to have abandoned. The ability to gather facts and documents to further defend this action will diminish with the passage of time; therefore, depending upon when Plaintiff chooses to comply with the Court's order, Defendant could suffer further prejudice if the case were put on hold indefinitely. Thus, this factor weighs in favor of dismissal.

### c. <u>A history of dilatoriness.</u>

A history of dilatoriness is generally established by repeated "delay or delinquency." *Adams*, 29 F.3d at 874. While once or twice is normally insufficient, this factor weighs in favor of dismissal where the plaintiff has a history of repeated delay. *Hildebrand*, 923 F.3d at 135 (citation omitted). In addition to repeated acts, "extensive" delay can also create a history of dilatoriness. *Adams*, 29 F.3d at 874. A "failure to prosecute" does not require that plaintiff take affirmative "steps to delay the trial … It is quite sufficient if [he/she] does nothing …. " *Id*. at 875 (citation omitted).

"While extensive delay may weigh in favor of dismissal, 'a party's problematic acts must be evaluated in light of its behavior over the life of the case.'" *Hildebrand*, 923 F.3d at 135 (quoting *Adams*, 29 F.3d at 875). Thus, where a plaintiff has not been previously delinquent the weight given to even a long delay should be mitigated. *Id*.

While Plaintiff was responsive to the Court's order requiring her to file a second amended complaint, Plaintiff does have a history of dilatoriness as evidenced by the almost eight months it took for her to comply with the Court's deficiency order entered on July 27, 2023. Thus, this factor weighs marginally in favor of dismissal.

### d. <u>Whether the party's conduct was willful or in bad faith.</u>

In determining if plaintiff's conduct constituted willful or bad faith, the "court should look for 'the type of willful or contumacious behavior' that can be characterized as 'flagrant bad faith,' such as [a case history of] failing to answer interrogatories for nearly a year and a half, demanding numerous extensions, ignoring admonitions by the court, and making false promises to correct delays." *Id*. (citing *Scarborough*, 747 F.2d at 875 (citation omitted)). "Willfulness involves intentional or self-serving behavior." *Adams*, 29 F.3d at 875. Although "[a] lengthy delay reflects

5

'inexcusable negligent behavior,' *id*. at 876, . . . that behavior alone does not rise to the level of willfulness or bad faith." *Hildebrand*, 923 F.3d at 135. Finally, "[b]ecause the harsh sanction of dismissal should serve to deter bad faith or self-serving behavior, and because of our policy of favoring decisions on the merits, [in the absence of evidence] that the delay was not effectuated willfully or in bad faith, [this factor] should weigh against dismissal." *Id*. at 136.

There is no indication on this record that Plaintiff's failure to file a response to Prime Care Medical's Motion to Dismiss was the result of any excusable neglect. The Court's orders sent to Plaintiff at her address of record were not returned to the Court, so there is no indication that Plaintiff failed to receive the Court's orders. Therefore, this factor weighs in favor of dismissal.

### e. **Effectiveness of sanctions other than dismissal.**

A district court must thoroughly consider "alternative sanctions before dismissing a case with prejudice." *Id*. (citing *Briscoe*, 538 F.3d at 262). The court should also provide an analysis of effectiveness sufficient "to honor [the] longstanding tradition of favoring decisions on the merits." *Id*. In so doing, the court should be mindful that "[a]lternatives are particularly appropriate when the plaintiff has not personally contributed to the delinquency." *Poulis*, 747 F.2d at 866 (citations omitted). "[A]lternative sanctions need only be effective toward mitigating the prejudice caused by dilatory behavior or delinquency." *Hildebrand*, 923 F.3d at 136. They are not required to be "completely ameliorative." *Id*.

Plaintiff is proceeding *in forma pauperis* so it is unlikely that any sanction imposing costs or fees upon her would be effective. Therefore, the Court can see no alternative sanction that would be appropriate other than dismissal.

### f. **Meritoriousness of claim or defense.**

"The standard for determining whether a plaintiff's claims are meritorious 'is moderate.'" *Adams*, 29 F.3d at 876. The standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim, and not a summary judgment standard, is applicable in a *Poulis* analysis. *Id.* at 869-70.

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." (*Fowler [v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (citation omitted)]; *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-18, (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

Plaintiff's Second Amended Complaint, ECF No. 10, alleges that a nurse at the Washington County Correctional Facility, who is not a defendant in this case, failed to provide Plaintiff with her diabetic medication for "at least" three weeks and with the cream that had been prescribed to her by her dermatologist.  She also alleges that she was allergic to the insulin that Defendant Dr. Laura Rusano prescribed her while in the Washington County Correctional Facility, and that when her insulin was changed by a doctor at the hospital that she was taken to for bullosis diabeticorum, Dr. Rusano refused to provide her with that same insulin after she returned to the jail.  Finally, she alleges that Dr. Rusano did not call her for sick call despite her putting in multiple requests to be seen for her high heart rate and swollen left shoulder.

Plaintiff alleges that Defendants were deliberately indifferent to her serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  To state a claim for deliberate indifference, a plaintiff must satisfy the two-part test drawn from *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "First, plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious.  Additionally, the plaintiff must make a 'subjective' showing that defendant acted with 'a sufficiently culpable state of mind'" – i.e., "deliberate indifference."  *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  With respect to the second prong, deliberate indifference is properly pleaded by factual allegations supporting the conclusion that the official knew of and disregarded an excessive risk to inmate health or safety.  *Natale v. Camden County Cor. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Famer v. Brennan*, 511 U.S. 825 (1994)).  The official must be "aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists[,]" and the official must also "draw the inference." *Natale*, 318 F.3d at 582.

First, the undersigned notes that Plaintiff has named only two Defendants in this case, and, to date, the Court has been unable to effectuate service on Dr. Rusano. The waiver of service of summons was not returned for Dr. Rusano, and after inquiries were made, the Court was informed that no such doctor by that name currently provides or has provided services at the Washington County Correctional Facility. While it is possible that Plaintiff has misspelled this Defendant's name to the point where she is not able to be sufficiently identified at the facility for purposes of accepting service,[1] Plaintiff has not notified the Court of any other name by which to attempt service for this Defendant, nor is it likely that Plaintiff would do so even if an order to show cause was entered given that Plaintiff appears to have abandoned this case.

The other Defendant in this case, Prime Care Medical, has filed a Motion to Dismiss Plaintiff's Second Amended Complaint. For a private corporation like Prime Care Medical, liability cannot be imposed under a theory of *respondeat superior* or vicarious liability. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, "for [a corporation] to be liable, [a plaintiff] must [establish in federal court] that there was a relevant [corporate] policy or custom, and that the policy [or custom] caused the [alleged] constitutional violation. . . ." *Natale*, 319 F.3d at 583-84 (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). Not all action rises to the level of a custom or policy. *Id*. at 584. A policy is made when a decision maker possessing final authority to establish policy with respect to the action issues a

---

[1] The undersigned is aware of a doctor with a somewhat similar name who provides services at the Washington County Correctional Facility.

final proclamation, policy or edict. *Id*. at 583. A custom is an act, while not approved by a decision maker, that is so widespread as to have the force of law. *Id*.

Plaintiff's Second Amended Complaint fails to set forth any specific factual allegations of wrongdoing against Prime Care Medical, let alone identify any particular policy or custom that directly caused the constitutional harm alleged. Instead, it is apparent that Plaintiff attempts to assert liability against Prime Care Medical based on a theory that it is vicariously liable for the alleged constitutional violations of its employees, which is impermissible for purposes of 42 U.S.C. § 1983. Since the Second Amended Complaint is devoid of any factual allegations to establish a facially plausible claim against Prime Care Medical, and since the Court has been unable to effectuate service on Dr. Rusano, this factor weighs in favor of dismissal.

In sum, the undersigned recommends that this case be dismissed because the majority of the *Poulis* factors weigh in favor of dismissal.

II.     **CONCLUSION**

For the aforementioned reasons, it is respectfully recommended that this case be dismissed with prejudice for Plaintiff's failure to comply with this Court's order to show cause, which expressly advised that this case could be dismissed for Plaintiff's failure to prosecute should she not file a response to the pending Motion to Dismiss by August 12, 2024.

In accordance with the Federal Magistrate Judge's Act, 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: September 19, 2024.

/s/ Kezia O. L. Taylor
Kezia O. L. Taylor
United States Magistrate Judge

Cc:   Joyce Cole
       Lawrence County Jail
       111 S. Milton Street
       New Castle, PA  16101

       Counsel for Defendant Prime Care Medical
       (Via CM/ECF electronic mail)

11